Filed 1/29/15  In re Samuel S. CA2/1
Opinion following rehearing

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re SAMUEL S. et al., Persons Coming Under the Juvenile Court Law. | B253528 (Los Angeles County Super. Ct. No. DK01560) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. SOFIA L., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Akemi D. Arakaki, Judge.  Dismissed.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

————————————

Sofia L. (mother) appeals from an order made at the dispositional hearing removing her children from her care. She contends the juvenile court's dispositional findings lack sufficient evidentiary support. We dismiss the case as moot.

## PROCEDURAL AND FACTUAL BACKGROUND

On September 30, 2013, Department of Children and Family Services (DCFS) filed a petition under Welfare and Institutions Code section 300,[1] subdivisions (a) and (b) on behalf of then three-year-old Samuel S., and his two younger siblings. As ultimately amended and sustained, the petition alleged that the children's parents engaged in a violent altercation in the presence of one of the children, during which the children's father (who is not a party to this appeal) struck mother, leaving her with facial bruising, a cut lip, contusions and an abrasion on her arm. Mother was alleged to have put the children at risk by letting father remain in the family home with unlimited access to the children.

DCFS reported that at school on September 25, 2013, when asked about his absence on September 23, Samuel S. had replied, "[M]y buba (dad) socked my mommy, chased her, fall over, and I was in the back seat crying." Mother and the children lived with the maternal grandparents. A social worker visited the home on September 25, 2013. The maternal grandmother said father had also lived in the home until three weeks before, when her husband threw him out. The maternal grandfather had heard Samuel S. shouting, "'Buba stop stop,'" and when he came to see what was going on, found father on top of mother, hitting her. The grandfather pulled father off of mother and made him leave. The maternal grandmother said the parents had a contentious relationship. Mother was reportedly good with the children, but had a problem controlling her anger. Both parents got aggressive and fought when they drank alcohol.

The maternal grandmother said mother and father fought a lot, and the children had been present during incidents of domestic violence. A year earlier, father was arrested after

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

he slammed a car door on mother's leg during a drunken argument. He was now on probation, and his probation officer had told him he would be deported if he was arrested again for domestic violence. Since then, mother had lied about her injuries and refused to call the police. Father had been fired for stealing and arrested for grand theft, and had fathered a child with another woman. Mother refused to leave him. The couple was attending counseling to try to save their relationship.

Father now lived with the children's paternal grandmother. On September 22, after returning from taking the children to father, mother said her face had gotten bruised after father "head butted" her during an argument. She stayed in bed the next day.

The social worker also spoke with Samuel S. who said his parents argued a lot and that father often hit mother in the face. On a recent visit with father, his parents had fought and father chased mother down the street. Mother fell, and father jumped on top of her and began "hitting her a lot," while Samuel S. cried and asked him to stop. Mother's body was bruised and she had gone to the hospital (where she was treated for a contusion to her eye and lacerations on both shoulders).

The parents arrived together while the social worker was still at the maternal grandparents' home. Mother had visible injuries on her head, cheek and arm, a black eye and a split lip. She denied having been hit, and was very angry about the DCFS investigation. She refused to keep the children from father, refused DCFS's offers of assistance and tried to leave with the children.

Mother gave various accounts of how she acquired her injuries, including having been attacked on the street by an unknown woman, and having been in a car accident. She denied telling maternal grandmother that father had "head-butted" her. Mother also denied that father hurt her the year before, or that maternal grandfather had seen father hitting her three weeks earlier. She insisted she was not afraid of father and would not leave him. Father admitted that he and mother had fought, and said they may have pushed one another. He denied hitting mother.

Initially, the social worker offered to file a nondetained petition, and to leave the children in mother's care in the maternal grandparents' home, if she agreed to cooperate and

3

the maternal grandparents could protect the children and her from father. The children were later taken into protective custody, however, after mother became increasingly upset, hostile and uncooperative, and tried to leave the house with the children. They were detained on September 30, 2013.

By November 4, 2013, the children were placed in foster care, and mother visited for several hours, twice a week. Mother was participating in domestic violence and parenting programs, and scheduled to begin individual counseling. The parents were participating in a five week counseling workshop for couples. Mother continued to be volatile and angry during her interactions with DCFS.

A combined jurisdictional/dispositional hearing was conducted on December 19, 2013. Mother pleaded no contest to the modified petition, which the court sustained. During the dispositional phase of the hearing, counsel for DCFS and the children requested that the children remain placed outside the parents' care. Mother, who now lived alone apart from father, requested that the children be returned to her care or that maternal grandmother be assessed as a placement.

The court commended mother for having enrolled in programs and doing what she could to get the children returned to her care. However, the court also observed that the parents had "minimize[ed] . . . the problems that got us here," and said it was premature to return the children to mother's custody. The children were declared dependents, removed from the parents' physical custody, and ordered suitably placed. The court ordered reunification services and monitored visitation for the parents. A six-month review hearing (§ 366.21, subd. (e)) was scheduled for June 26, 2014. Mother appeals.

## DISCUSSION

Mother's sole assertion on appeal is that there is insufficient evidence to support the juvenile court's order removing the children from her care or its finding that reasonable efforts were undertaken to prevent removal.

While this appeal was pending both parties filed motions requesting this court to take judicial notice of a June 26, 2014 postjudgment minute order by which the juvenile court ordered the children returned to their parents' custody and care. We granted those

4

requests and augmented the record. DCFS also filed a motion seeking to have the appeal dismissed arguing that the children's return rendered mother's appeal moot, as there is no effective relief we can grant her. In response, mother argued that the appeal is not moot. Although the children have been returned to her care, mother argues that the juvenile court's dispositional findings may negatively impact her ability to obtain employment as a police officer, as they could be "the first of many findings which could result in [her] being labeled an 'unfit parent,'" and deprive her of services or justify the setting of a section 366.26 hearing.[2]

Mother's concern about the remote possibility that the juvenile court's findings will cause her to suffer disadvantageous and prejudicial collateral consequences is highly speculative. Mother was not found guilty of any misdeeds, nor does the record reflect that the juvenile court ever labeled (or threaten to label) her an unfit parent.[3] Additional evidence shows the juvenile court has concluded the children have remained safe in mother's care. This evidence bears on the issue of whether the appeal has become moot and must be dismissed. (See *In re Karen G.* (2004) 121 Cal.App.4th 1384, 1389–1390 [appellate court may consider postjudgment evidence in determining whether an appeal has become moot].)

---

[2] Mother declared she was advised by police department mentor to hold off on a pending application for employment "[d]ue to the allegations and case opened by DCFS."

[3] Indeed, on our own motion, we take judicial notice of the December 15, 2014, minute order in this case by which the juvenile court permitted the children to remain in the parents' care and terminated its jurisdiction.

Ordinarily, an appellate court may not consider postjudgment evidence that was never before the juvenile court or rely on such evidence outside the record to reverse the judgment. (*In re Zeth S.* (2003) 31 Cal.4th 396, 400.) Because this appeal is not from an order terminating parental rights and we are not reversing, taking judicial notice will not impair "the juvenile law's purpose of 'expediting the proceedings and promoting the finality of the juvenile court's orders and judgment.'" (*In re Salvador M.* (2005) 133 Cal.App.4th 1415, 1421, quoting *Zeth S.*, at p. 413.) The minute order relates solely to the issue of whether the appeal has become moot and should be dismissed, not its merits. (*In re Josiah Z.* (2005) 36 Cal.4th 664, 676, citing *Zeth S.*, at p. 413.)

5

"'[A]n action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A reversal in such a case would be without practical effect, and the appeal will therefore be dismissed.' [Citation.]" (*In re Dani R.* (2001) 89 Cal.App.4th 402, 404 (*Dani R.*).) We decide on a case-by-case basis "whether subsequent events in a dependency case have rendered [an] appeal moot and whether [our] decision would affect the outcome of the case in a [later] proceeding." (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1055.)

In *Dani R.*, *supra*, 89 Cal.App.4th 402, a mother appealed a juvenile court order denying her request for reunification services. While the appeal was pending, the juvenile court granted the mother's petition for reunification services. The appellate court found that the mother's subsequent receipt of services rendered her appeal moot, and dismissed the appeal. (*Id.* at p. 406; accord *In re C.C.* (2009) 172 Cal.App.4th 1481, 1488–1489 [juvenile court's order restoring monitored visitation rendered parent's appeal re earlier order denying such visitation moot].) This case is analogous to *Dani R.* and *In re C.C.* While this appeal was pending mother effectively obtained the relief sought by her appeal, which is therefore moot.

**DISPOSITION**

The appeal is dismissed.

NOT TO BE PUBLISHED.

JOHNSON, J.

We concur:

CHANEY, Acting P. J.

MILLER, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7